Filed 11/27/13  P. v. Watson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056797 |
| v. | (Super.Ct.No. FWV1101576) |
| AARON BRANDON WATSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Mary E. Fuller, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

Acting in pro. per., defendant and appellant Aaron Brandon Watson pled no contest to stalking. (Pen. Code, § 646.9, subd. (b).)[1] In return, the remaining allegations were dismissed, and defendant was placed on felony probation on various terms and conditions. Subsequently, defendant violated the terms of his probation by committing a petty theft. Defendant's probation was then revoked, and he was sentenced to three years in county jail. On appeal, defendant argues that he should be allowed to withdraw his no contest plea, because the trial court applied an improper standard in determining whether he was competent to represent himself and to enter his no contest plea. We reject this contention and affirm the judgment.

I

BACKGROUND

On June 29, 2011, an information was filed charging defendant with attempted first degree burglary (§§ 664/459) and stalking (§ 646.9, subd. (b)). The information further alleged that defendant had suffered two prior prison terms within the meaning of section 667.5, subdivision (b).

On August 5, 2011, Judge Shahla Sabet declared a doubt as to defendant's competency, suspended criminal proceedings, and appointed Dr. David Walsh to examine defendant pursuant to sections 1368 and 1369.Dr. Walsh concluded that defendant was competent to stand trial; that he understood the nature and purpose of the proceedings against him; and that he could cooperate in a rational manner with his

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

attorney.  Dr. Walsh also found that defendant did not exhibit symptoms of depression, psychosis, or mania, but that he had shown signs of cognitive irregularities as evidenced by his obsession in repeatedly returning to the victim's residence.  Defendant's cognitive irregularities, however, were not serious enough to "warrant a clinical diagnosis."

On September 16, 2011, defendant's counsel requested that defendant be evaluated by a second doctor.  Judge Sabet granted the request and appointed Dr. Laura Brodie to evaluate defendant.  Dr. Brodie also found defendant was competent to stand trial; that he understood the nature and purpose of the proceedings against him; and that he could cooperate in a rational manner with his attorney.  However, Dr. Brodie noted that defendant suffered from a "possible delusional disorder in regard to his sister and the vendetta he feels she is creating," and that "the delusion is fixated and focused only in the area of his sister's desire to take his money and inheritance."  In all other areas, defendant was "rational and able to function effectively."

On November 4, 2011, Judge Sabet found that defendant was competent to stand trial and reinstated the proceedings.

On December 9, 2011, Judge Sabet again declared a doubt as to defendant's competency, suspended criminal proceedings, and appointed Dr. Tseday Aberra to examine defendant.  Dr. Aberra had attempted to evaluate defendant; however, defendant declined to participate in the evaluation, stating the court should use the previously submitted psychological evaluations.

On January 20, 2012, defendant informed Judge Sabet that he would not cooperate with any further evaluations.  Defendant and his counsel stipulated that the court could

proceed by reviewing the evaluations previously conducted by Drs. Walsh and Brodie. Judge Sabet stated that if defendant's counsel had no doubt as to defendant's competency, she would proceed with the two previous reports. Judge Sabet found defendant competent to stand trial, noting defendant was malingering, attempting to delay his case, and "playing with the system."

On that same date, January 20, defendant made a *Marsden*[2] motion to change his lawyer. He also made a *Faretta*[3] motion to represent himself. After Judge Sabet conducted the hearing and denied defendant's *Marsden* motion, Judge Sabet heard defendant's request to represent himself. Judge Sabet explained to defendant his potential maximum sentence and the consequences of representing himself. Judge Sabet also gave defendant a *Faretta* waiver to read, initial, and sign. Defendant indicated that he had read, initialed, and signed the *Faretta* waiver form; that he understood it was generally unwise to represent himself; and that despite it being an unwise decision, defendant still wished to represent himself. Defendant noted that he had a high school diploma and a bachelor's degree in computer science. After Judge Sabet at length again explained the procedures and ills in self-representation, Judge Sabet granted defendant's

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[3] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

motion to represent himself, finding defendant had knowingly, intelligently and voluntarily waived his right to counsel in all the cases pending before the court.[4]

Subsequently, on that same date, January 20, defendant was arraigned on a second amended information, charging defendant with one count of stalking (§ 646.9, subd. (b), count 1); two counts of trespassing by entering and occupying real property (§ 602, subd. (m), count 2 & 3); four counts of disobeying a court order (§ 166, subd. (a)(4), counts 4-7); and attempted first degree burglary (§§ 664/459, count 8). The second amended information also alleged that defendant had suffered two prior prison terms. (§ 667.5, subd. (b).)

On February 14, 2012, defendant made an oral motion to disqualify Judge Sabet. Judge Sabet denied the motion, explaining to defendant that he had to make a written motion to disqualify a judge. On that same date, the prosecutor offered defendant a plea—plead guilty to the felony stalking offense, dismiss all other counts, be released from county jail, and be placed on probation for three years. Defendant rejected that offer. Defendant thereafter sought to withdraw his pro. per. status due to time constraints, the judge being unreasonable, and so an attorney could file written motions. Judge Sabet took the request under submission to research the matter and informed defendant she would rule on February 24, 2012.

On February 24, 2012, defendant indicated that he would like to represent himself and that he did not need an attorney. Defendant thereafter again moved to disqualify

---

[4] The People's motion to consolidate several cases was granted on November 18, 2011.

5

Judge Sabet, handing court staff a declaration of disqualification under Code of Civil Procedure section 170.1. Judge Sabet stayed the proceedings so that she could file a response and the matter could be heard by another judge. Defendant then asked to speak with the prosecutor off the record. After the conference, the prosecutor went back on the record stating that she and defendant had reached a plea bargain. In light of the motion to disqualify, Judge Sabet transferred the matter to Judge Mary Fuller.

Thereafter, on that same date, February 24, defendant pled no contest to stalking. In return, defendant was promised that the remaining allegations would be dismissed and that he would be placed on felony probation for a period of three years on various terms and conditions, including serving 365 days in county jail with credit for time served. During the taking of the plea, defendant personally asked questions to terms he did not understand. After advising defendant of his constitutional rights and the consequences of pleading guilty, Judge Fuller found that defendant understood his rights, the nature of the crimes charged against him, and the consequences of pleading guilty. Judge Fuller also found that defendant knowingly and voluntarily pled no contest and that he had expressly waived his constitutional rights. Defendant was subsequently released on his own recognizance pursuant to the plea agreement. The sentencing hearing was set for March 23, 2012.

On March 23, 2012, defendant asked to withdraw his plea and requested counsel to represent him. Judge Fuller explained to defendant that the bailiff would have to take him into custody and appointed a public defender to represent him. After conferring with his appointed counsel and the court's denial of his motion to be released on his own

6

recognizance, defendant requested he be sentenced. The court thereafter placed defendant on supervised probation for a period of three years and dismissed the remaining allegations in accordance with the plea agreement.

About one month later on April 24, 2012, defendant was arrested for petty theft after he was observed stealing shaving items from a Sears' store.

On April 25, 2012, the People filed a petition to revoke defendant's probation based on his arrest for petty theft. (§ 490.5, subd. (a).) Defendant's probation was revoked on April 27, 2012. Following a probation violation hearing on June 1, 2012, the court found true that defendant had violated his probation and ordered that defendant's probation remain revoked.

On June 29, 2012, defendant asked to withdraw his no contest plea in the stalking case, claiming he was coerced into pleading no contest. He also requested that he be allowed to represent himself. Judge Fuller advised defendant that a motion to withdraw a plea had to be in writing; that he had to give the People notice; and that the court could not hear the motion to withdraw his plea on that day. Judge Fuller also explained to defendant that even if he was allowed to represent himself, the motion to withdraw his plea would not be heard that day. The court then granted defendant's appointed counsel's request to continue the sentencing hearing. Defendant however interjected and requested he be allowed to represent himself. Judge Fuller explained to defendant that he had competent representation and the perils of representing himself. Defendant still wished to represent himself, and the court granted defendant's request. Thereafter, defendant again sought to make an oral motion to withdraw his no contest plea. The

court explained to defendant that he had to file a written motion, denied defendant's oral request, and continued the matter.

On July 23, 2012, defendant filed a written motion entitled, "Motion Objecting [*sic*] Prosecution Repeatedly Presenting False Evidence to the Court and Probation/Court Jurisdiction per Penal Code 1203.2a," which the court treated as a motion to withdraw his no contest plea. A hearing on the motion was held on July 27, 2012. Defendant stated the motion was based on "induced plea, question of favorable exculpatory evidence from the District Attorney, [and] misrepresentation of evidence for withdrawal of plea," and again accused the victim of falsifying evidence. After hearing argument from defendant, Judge Fuller denied defendant's motion, and at defendant's request, appointed an attorney to represent defendant for sentencing. Following argument from counsel, Judge Fuller denied defendant's request to be reinstated on probation and sentenced defendant to three years in county jail.

On July 27, 2012, defendant filed a notice of appeal, claiming his no contest plea was unconstitutional. He also requested a certificate of probable cause. Judge Fuller granted defendant's request for a certificate of probable cause on July 30, 2012.

II

DISCUSSION

Defendant argues that he should be permitted to withdraw his no contest plea because the trial court improperly focused on his knowledge and experience rather than his mental state and ability to understand the proceedings and the consequences of his plea in allowing him to represent himself in entering the plea. In support, he cites to

8

cases involving the standard for self-representation, arguing his mental health issues rendered him incompetent to represent himself and the court "fundamentally confused" the self-representation inquiry.

A defendant may move to withdraw his plea at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended, on a showing of good cause. (§ 1018.) "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea. [Citations.] But good cause must be shown by clear and convincing evidence." (*People v. Cruz* (1974) 12 Cal.3d 562, 566.) Furthermore, "[g]uilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged. [Citations.]" (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103.) "'"[T]he withdrawal of such a plea rests in the sound discretion of the trial court and may not be disturbed unless the trial court has abused its discretion." [Citation.]'" (*People v. Wharton* (1991) 53 Cal.3d 522, 585.)

While defendant does not dispute he was mentally competent to stand trial, he alleges on appeal that the trial court failed to adequately determine he was mentally competent to make the waiver of the right to counsel for the purposes of pleading guilty, maintaining a different standard of inquiry is required for the purposes of pleading guilty than when a defendant elects to proceed to trial. We conclude the trial court did not err by granting defendant's request for self-representation, and therefore defendant is not entitled to withdraw his no contest plea.

9

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' [Citations.]" (*Hill v. Lockhart* (1985) 474 U.S. 52, 56, citing *North Carolina v. Alford* (1970) 400 U.S. 25, 31; *Boykin v. Alabama* (1969) 395 U.S. 238, 242.)[5] "Waivers of constitutional rights [given up in the process of entering such a plea] not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." (*Brady v. United States* (1970) 397 U.S. 742, 748, fn. omitted.) "What is at stake for an accused facing . . . imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." (*Boykin v. Alabama*, *supra*, 395 U.S. at pp. 243-244.) In short, the pertinent inquiry is whether the record affirmatively shows the admission was voluntary and intelligent under the totality of the circumstances. (*People v. Mosby* (2004) 33 Cal.4th 353, 360; *People v. Howard* (1992) 1 Cal.4th 1132, 1175.)

Here, unlike the usual case, we are presented with the argument that despite the seeming regularity of the change of plea proceedings, defendant did not voluntarily and intelligently enter into his no contest plea because the trial court failed to properly inquire into his mental competency to represent himself for the purposes of pleading no contest.

---

[5] For our purposes, guilty and no contest pleas are treated the same. (See § 1016, subd. 3.) Accordingly, references in the case law to guilty pleas also encompass defendant's no contest plea.

"A criminal defendant may not be tried unless he is competent [citation], and he may not . . . plead guilty unless he does so 'competently and intelligently' [citations]." (*Godinez v. Moran* (1993) 509 U.S. 389, 396 (*Godinez*).)  In *Dusky v. United States* (1960) 362 U.S. 402 (*Dusky*), the United States Supreme Court stated that, for a finding of competency to stand trial, "it is not enough . . . that 'the defendant [is] oriented to time and place and [has] some recollection of events,' but that the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he had a rational as well as factual understanding of the proceedings against him.'"  (*Ibid.*; accord, *Drope v. Missouri* (1975) 420 U.S. 162, 172.) California statutory law defines an accused as mentally incompetent "if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."  (§ 1367, subd. (a).)  The standards, although not matching word for word, are identical.  (*People v. Jablonski* (2006) 37 Cal.4th 774, 808; see *People v. Ramos* (2004) 34 Cal.4th 494, 507.)

In *Faretta*, *supra*, 422 U.S. 806, the United States Supreme Court held the Sixth Amendment to the United States Constitution gives criminal defendants the right to represent themselves.  Before *Faretta* was decided, the law in California had been that a criminal defendant had no constitutional or statutory right to self-representation, except, in noncapital cases, the trial court had discretion to grant a defendant's request for self-representation.  (*People v. Sharp* (1972) 7 Cal.3d 448, 459, 461, 463-464.)

11

"In the wake of *Faretta's* strong constitutional statement, California courts tended to view the federal self-representation right as absolute, assuming a valid waiver of counsel." (*People v. Taylor* (2009) 47 Cal.4th 850, 872 (*Taylor*).) In other words, a trial court had to grant a defendant's request for self-representation if the defendant voluntarily and intelligently elected to do so, even if the defendant, though competent to stand trial, was not competent to serve as his or her own attorney. (*Id.* at pp. 872-873.)

In *People v. Wharton* (1991) 53 Cal.3d 522, the California Supreme Court rejected the notion that a higher degree of competence is required to plead guilty than merely to stand trial. (*Id.* at pp. 583-584.) In *Godinez*, the United States Supreme Court agreed that the competency standard for pleading guilty or waiving the right to counsel is no higher than the competency standard for standing trial. (*Godinez*, *supra*, 509 U.S. at p. 391.) Reiterating the *Dusky* benchmark as the appropriate one for competence to stand trial (*id.* at p. 396), the court stated that, "while the decision to plead guilty is undeniably a profound one, it is no more complicated than the sum total of decisions that a defendant may be called upon to make during the course of a trial. . . . This being so, we can conceive of no basis for demanding a higher level of competence for those defendants who choose to plead guilty. If the *Dusky* standard is adequate for defendants who plead not guilty, it is necessarily adequate for those who plead guilty." (*Id.* at pp. 398-399.)

The court went on to explain, however, that "[a] finding that a defendant is competent to stand trial . . . is not all that is necessary before he may be permitted to plead guilty . . . . In addition to determining that a defendant who seeks to plead guilty . . . is competent, a trial court must satisfy itself that the waiver of his constitutional rights

12

is knowing and voluntary. [Citations.] In this sense there *is* a 'heightened' standard for pleading guilty . . . but it is not a heightened standard of competence."[6] (*Godinez, supra*, 509 U.S. at pp. 400-401, fn. omitted.) In a footnote, the court elaborated: "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. See *Drope v. Missouri, supra*, [420 U.S. at p. 171] (defendant is incompetent if he 'lacks the *capacity* to understand the nature and object of the proceedings against him') (emphasis added). The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced. See *Faretta v. California, supra*, [422 U.S.] at [p.] 835 (defendant waiving counsel must be 'made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open"') [citation]; *Boykin v. Alabama*, [*supra*, 395 U.S. at p. 244] (defendant pleading guilty must have 'a full understanding of what the plea connotes and of its consequence')." (*Godinez, supra*, 509 U.S. at p. 401, fn. 12.)

In 2008, the United States Supreme Court decided *Indiana v. Edwards* (2008) 554 U.S. 164 (*Edwards*). In that case, the Indiana state trial court denied the defendant's request for self-representation and found that, while the defendant was competent to

---

[6] The court made clear it was not suggesting a trial court is required to make a competency determination in every case in which a defendant seeks to plead guilty, but that, as in any criminal case, a competency determination is necessary only when that court has reason to doubt the defendant's competence. (*Godinez, supra*, 509 U.S. at p. 401, fn. 13.)

13

stand trial, he was not competent to represent himself at trial. (*Id.* at p. 169.) An Indiana appellate court ordered a new trial, and the Indiana Supreme Court affirmed the appellate court on the ground *Faretta* and *Godinez* required the trial court to permit the defendant to represent himself. (*Edwards*, at p. 169.)

The United States Supreme Court reversed, holding: "[T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." (*Edwards*, *supra*, 554 U.S. at pp. 177-178.) The court called those defendants who are competent to stand trial but not to represent themselves "gray-area defendants." (*Id.* at p. 174.)

*Edwards* did not hold that due process requires a higher standard of mental competence for self-representation than is required to stand trial with counsel. Rather, "[t]he *Edwards* court held only that states *may*, without running afoul of *Faretta*, impose a higher standard . . . ." (*Taylor*, *supra*, 47 Cal.4th at pp. 877-878.) In *Taylor*, the California Supreme Court upheld the trial court's decision to grant the defendant's request for self-representation. (*Id.* at pp. 856, 868, 878-879.) Because *Edwards* did not mandate the application of "'a dual standard of competency for mentally ill defendants,'" that case "does not support a claim of federal constitutional error in a case like the present one, in which defendant's request to represent himself was granted." (*Taylor*, at p. 878.)

14

The *Taylor* court also rejected the defendant's argument the trial court should have exercised its discretion, recognized in *Edwards*, to apply a higher standard than competence to stand trial. (*Id.* at p. 879.)

We read *Godinez's* two-part inquiry (*Godinez, supra*, 509 U .S. at p. 401) as requiring, first, that in order to be competent, a defendant must be capable of entering a plea that is valid. In other words, he or she cannot merely be oriented to time and place and have some recollection of events, but must have a present ability to consult with his or her attorney with a reasonable degree of rational understanding, and have a rational and factual understanding of the proceedings. He or she must be capable of comprehending the rights being given up and of understanding the proceedings, and of making a choice among the alternative courses of action open to him or her with a reasonable degree of rationality. In short, the defendant must have a sufficient level of intellectual functioning to be able to understand what is being said, both by his or her attorney and by the court, and to process that information. Second, the defendant must not only have the capacity or ability to understand, he or she must actually understand what he or she is doing and the significance and consequences of that decision.

Nothing in the present record suggests that Judge Sabet confused the standards for self-representation for purposes of entering a plea under *Godinez* with the standards for self-representation for purposes of proceeding to trial under *Faretta* and *Edwards*. Initially, we note that defendant erroneously contends that he sought to represent himself for the *sole* purpose of the no contest plea. Defendant desired to represent himself *before* any plea discussion and for purposes of proceeding to trial rather than the sole purpose of

15

pleading guilty. Defendant's inquiry for the purposes of the *Faretta* motion was before Judge Sabet, and *after* the judge had already determined and delved into defendant's mental competency. Defendant did not plead until almost a month later before Judge Fuller, after Judge Sabet had already determined defendant was competent to stand trial and after defendant had knowingly and intelligently waived his right to counsel.

Furthermore, the record shows that defendant was mentally capable of understanding the nature of the charges against him and the nature of the rights he was asked to waive. During the waiver of his right to counsel and the plea hearing, defendant answered questions appropriately; filled out, signed, and initialed the proper waiver form adequately; and he was advised of the ills in representing himself and the consequences of pleading no contest. Besides pointing to statements made by defendant during the hearings, defendant has not offered any evidence to show that he did not actually understand the proceedings and the consequences of pleading guilty. Although the statements cited by defendant in his brief could be argued as demonstrating defendant's lack of actual understanding, it afforded no basis upon which to differentiate capacity to understand—competence—from actual appreciation. Stated another way, the record does not support a finding that defendant was capable of understanding and knowingly, intelligently, and voluntarily entering a no contest plea, and yet did not actually understand for reasons not amounting to incompetence.[7] The record establishes that

---

[7] Similarly, there was no evidence of any mistake, ignorance, or other factor constituting good cause for withdrawal of the plea under section 1018, apart from evidence demonstrating incompetence.

defendant was intelligent, capable of entering a valid plea, and waiving his right to counsel. There is no evidence presented to the contrary, only conclusions that his mental competence rendered defendant incapable of entering a valid plea.

In our view, if defendant was competent, then necessarily he had the capacity to enter a valid plea; if defendant could not understand what was being said to him or process it, then he was not competent and he likewise places a different perspective on the issue. Defendant has repeatedly and expressly refused to place his competence in dispute, both in the trial court and before this court. We may speculate that this concession was made because the psychiatric evidence available is that he was, in fact, competent and therefore limiting the argument that properly could be made to whether he actually understood. Defendant's attempt to parse the standards of competence and the concepts of knowing and intelligent waiver for purposes of pleading guilty versus for proceeding to trial into distinct aspects that utilize the same standards to reach different results cannot be logically reconciled. Defendant was either competent or he was not. Defendant's argument would place a trial court in the untenable position of never being able to achieve a level of confidence in his understanding, which is the precise purpose of a competency proceeding under section 1368.

We have carefully reviewed defendant's plea. Defendant personally asked questions to terms he did not understand. In addition, Judge Fuller made specific efforts to ensure that defendant understood the terms of his plea and, after further explanation, elicited specific concessions from defendant that he understood. Not only was there absolutely nothing in the plea record to indicate defendant did not understand the rights

17

he was waiving or the nature of the process, there was nothing to suggest defendant was mentally incompetent to enter the plea. We find no basis to conclude defendant did not understand.

In our view, Judge Fuller—an experienced jurist, made every effort to ensure that an adequate plea was taken. In addition, defendant was found competent to stand trial, and defendant did not exhibit any mental issues before Judge Fuller to suggest otherwise. Furthermore, following an adequate *Farretta* inquiry before Judge Sabet, defendant knowingly and intelligently waived his right to counsel for the purposes of proceeding to trial or pleading no contest. Moreover, given that defendant was competent to enter a plea and there was no evidence to suggest otherwise, even if Judge Sabet erred in the *Faretta* inquiry, the record does not support the conclusion that the plea, which was taken before a different jurist, was not knowing and intelligent for purposes of understanding or waiver. Upon being asked at the time of the change of plea proceedings, defendant expressed his confidence that he understood and there was no evidence to suggest that he was incompetent of understanding. Now, after a substantial length of time, defendant asserts, not that he was incompetent at the time he entered into his plea, but that, as a result of an inadequate inquiry under *Faretta* for the purposes of entering a plea, he should be permitted to withdraw his no contest plea. The evidence simply does not support a conclusion that defendant did not actually understand what he was doing.

Here, Judge Sabet properly applied the standards for self-representation, and there is no evidence to suggest otherwise. Defendant knowingly and intelligently pled no contest. Accordingly, there is no basis to withdraw defendant's plea of no contest.

18

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLSIHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

RICHLI

J.

CODRINGTON

J.